# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

**JANICE C. ALLEN**,                    Case No.: 6:11-cv-06167-SI

                 Plaintiff,

    v.                                    **OPINION AND ORDER**

**MICHAEL ASTRUE**, Commissioner
Social Security Administration,

                 Defendant.

Donald Reeder, Glenn, Reeder & Gassner, LLP, 205 SE 5th Street, Madras, OR 97741.
Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite
600, Portland, OR 97201; Summer Stinson, Special Assistant United States Attorney, Office of
the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A,
Seattle, WA 98104. Attorneys for Defendant.

**SIMON, District Judge**.

# I.  INTRODUCTION

Plaintiff Janice C. Allen ("Ms. Allen") brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB").  The court has jurisdiction under 42 U.S.C. § 405(g). Ms. Allen argues that the Administrative Law Judge ("ALJ") improperly discredited certain medical evidence and her testimony and failed to consider her depression and emphysema in the ALJ's analysis of Ms. Allen's residual functional capacity. The court agrees. Accordingly, the decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with the instructions herein.

# II.  BACKGROUND

Ms. Allen has worked as an office clerk, tree planter, cleaner, and dog breeder and trainer. Tr. 125. In January 2007, at the age of 51, she applied for DIB. Tr. 98-101. Ms. Allen asserts that she is disabled as a result of chronic headaches, neck and back pain, depression, and emphysema. Tr. 38-50; Pl.'s Br. at 4-5. After the Commissioner denied her application initially and on reconsideration, Ms. Allen requested a hearing before an ALJ. Tr. 71-86. ALJ John J. Madden Jr. held a hearing on September 3, 2009. Tr. 27-68. Following the hearing, the ALJ issued a written decision denying benefits. Tr. 16-25. The Appeals Council denied Ms. Allen's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Ms. Allen now requests judicial review of that decision.

Ms. Allen alleges that she been unable to work since January 1, 2002. Tr. 98. She last reported earnings in 1999. Tr. 33-34; 102. Based on her earnings through 1999, Ms. Allen has obtained sufficient quarters of coverage to remain insured through December 31, 2004. Tr. 16;

102-07. Thus, in order to be eligible for DIB, Ms. Allen must establish that she became disabled

between January 1, 2002 and December 31, 2004 (hereinafter the "relevant period"). *See* 20

C.F.R. §§ 404.130, 404.131; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (to be "entitled

to disability benefits, [the claimant] must establish that her disability existed on or before" her

last insured date).

### III.  DISABILITY DETERMINATION AND STANDARDS

**A.      Legal Standards for Determination of Disability**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Commissioner*, 648 F.3d 721, 724 (9th Cir. 2011). The five steps in the process

proceed as follows:

1.    Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.    Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.    Does the impairment "meet or equal" one or more of the specific impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.    Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.    Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof for the first four steps in the process. *Id.* at 953; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, then the claimant is disabled.  If, however, the Commissioner proves that the claimant is able to perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

**B.      The ALJ's Decision**

The ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520, and described above. The ALJ agreed that Ms. Allen had not engaged in substantial gainful activity during the relevant period. Tr. 18. Accordingly, the ALJ found that Ms. Allen satisfied step one. *Id.*

At step two, the ALJ found that Ms. Allen suffered from cervical degenerative disc disease status post fusion and headaches. *Id.* Thus, Ms. Allen satisfied step two.

At step three, the ALJ found that through the date she was last insured, Ms. Allen did "not have an impairment or combination of impairments that met or medically equaled one of the listed impairments[.]" Tr. 20. The ALJ, thus, proceeded to step four.

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect the claimant's ability to perform work. To make this determination, the ALJ formulates the

claimant's residual functional capacity ("RFC"). An RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC "is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p.[1] The ALJ found that through the date she was last insured, Ms. Allen had an RFC to perform light work, subject to only "occasional overhead reaching with the bilateral upper extremities." Tr. 20.

After the ALJ has formulated the claimant's RFC, the ALJ must consider whether the claimant can, in light of that RFC, perform past or other work. To do so, the ALJ may rely on the testimony of a vocational expert ("VE"). 20 C.F.R. §§ 404.1560(b)(2) and 404.1566(e). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988). In response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). The job must exist "in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a).

The ALJ called a VE to testify during the administrative hearing. Tr. 62-67. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated for Ms. Allen's RFC. The VE replied that a person with those restrictions would be able to perform

---

[1]  The Commissioner publishes rulings to clarify the Social Security Administration's regulations and policy. See *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir.1991) (*en banc*). Although they do not carry the force of law, SSRs are binding on an ALJ. *Bray v. Comm'r*, 554 F.3d 1219, 1224 (9th Cir. 2009).

the work of an office clerk, an assembler, a bakery worker, and a laminating machine operator. Tr. 65. The ALJ also asked the VE to consider a hypothetical claimant "who is bedridden for 12 months." Tr. 66. The VE agreed that a hypothetical claimant who was bedridden for 12 months would be unable to perform any of the four occupations he had identified. Tr. 66.

Based on the VE's testimony, the ALJ found that through the date she was last insured, Ms. Allen "was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 24. The ALJ thus concluded that Ms. Allen was not disabled. Tr. 24-25.

## IV.  STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V.  DISCUSSION

Ms. Allen argues that the ALJ: (1) failed to ask the VE a hypothetical question based on the evidence in the record; (2) erroneously discredited certain medical evidence; (3) erroneously discredited Ms. Allen's testimony; and (4) failed to properly consider Ms. Allen's depression and emphysema. The court agrees with Ms. Allen's second, third, and fourth arguments. The

Commissioner failed to properly evaluate certain medical evidence, improperly discredited Ms. Allen's testimony, and failed to address Ms. Allen's claimed depression.

**A.    Hypothetical Question**

Ms. Allen's first argument appears to be the ALJ's hypothetical question to the VE was not supported by substantial evidence. Pl.'s Br. at 12-14. Ms. Allen argues that the ALJ did not credit her testimony and evidence from Dr. David Schloesser, Dr. Inice Gough, and Dr. Kathryn Kocurek and incorporate that evidence into the ALJ's formulation of his hypothetical question to the VE. Pl.'s Br. at 13-14. This argument appears to be derivative of Ms. Allen's other arguments; that is, if Ms. Allen is correct that the ALJ erred by improperly discrediting her testimony and evidence from Dr. Schloesser, Dr. Gough, and Dr. Kocurek, then the ALJ also erred in failing to incorporate that evidence into the hypothetical question. Because Ms. Allen's arguments regarding her testimony and evidence from Dr. Schloesser, Dr. Gough, and Dr. Kocurek—discussed in greater detail below—are dispositive, it is unnecessary to separately consider this argument.

**B.    Medical evidence**

Ms. Allen argues that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Dr. David Schloesser, Dr. Inice Gough, and Dr. Kathryn Kocurek. Pl.'s Br. at 14-18. An ALJ must determine the weight to give each source of evidence. 20 C.F.R. § 404.1527(d), (f). Opinions from "acceptable medical sources"—such as licensed medical doctors like Dr. Schloesser and Dr. Kocurek—may generally be accorded more weight than those from "other sources"—such as chiropractors like Dr. Gough. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 404.1513. An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ

must apply in order to do so. *See* 20 C.F.R. § 404.1527 (standards for evaluating medical

opinions); *Lester v. Chater*, 81 F.3d 821, 830-33 (9th Cir. 1995) (standards for evaluating

acceptable medical sources); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (standards

for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined

a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific,

legitimate reasons for doing so, and those reasons are supported by substantial record evidence."

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

### 1. Dr. David Scholesser

Dr. Schloesser treated Ms. Allen for headaches during the relevant period. Tr. 723-39.

Dr. Schloesser's treatment notes were part of the record before the ALJ, but Dr. Schloesser did

not submit a formal opinion regarding Ms. Allen's medical condition or capacity for work before

the ALJ issued his decision on October 30, 2009. Dr. Schloesser's notes reveal that Ms. Allen's

headaches continued throughout her treatment, although they decreased in intensity. *See, e.g.,*

Tr. 725-28, 730. The ALJ discussed Dr. Schloesser's treatment notes. Contrary to Ms. Allen's

argument, the ALJ did not discount Dr. Schloesser's notes. *See* Tr. 21. Accordingly, the ALJ did

not commit error here.

After the ALJ issued his written decision on October 30, 2009, Ms. Allen submitted a

letter from Dr. Schloesser, dated December 7, 2009, to the Commissioner's Appeals Council.

Tr. 841. This court must consider new evidence submitted to the Appeals Council when

reviewing the ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, No. 11–35216, 2012 WL

2149465 *4 (9th Cir. June 14, 2012) ("when the Appeals Council considers new evidence in

deciding whether to review a decision of the ALJ, that evidence becomes part of the

administrative record, which the district court must consider when reviewing the Commissioner's

final decision for substantial evidence").[2] Dr. Schloesser's letter briefly describes Ms. Allen's history of headaches and her medications and other treatments, but does not contain new evidence not already recorded in Dr. Schloesser's treatment notes. Although Dr. Schloesser's letter states that Ms. Allen's headaches "have been disabling," he does not provide an explanation for this conclusion or discuss how Ms. Allen's headaches have impaired her functional capacity. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("the regulations give more weight to opinions that are explained than to those that are not"). Furthermore, the determination of whether a claimant is disabled is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."). As such, Dr. Schloesser's letter neither alters the evidence recorded in his treatment notes nor commands a finding of disability.

### 2. Dr. Inice Gough

Dr. Gough, a chiropractor, treated Ms. Allen from November 2002 through March 2003. Her treatment notes reveal that Ms. Allen suffered from headaches, and neck and lower back pain. Tr. 222-89. The ALJ did not discuss or comment on any of Dr. Gough's treatment notes. Although chiropractors are not an "acceptable medical source" that can establish the existence of an impairment, they are, however, a competent source that the ALJ must consider when assessing the severity of a claimant's impairments. 20 C.F.R. §§ 404.1513(a), (d) and

---

[2]   Although this court must consider evidence submitted to the Appeals Council, the court does not review the decision of the Appeals Council. When the Appeals Council declined to review Ms. Allen's case, the ALJ's decision—not the Appeals Council's decision—became the final decision of the Commissioner. Tr. 1. This court only has jurisdiction to review the final decision of the Commissioner. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("[W]e have no jurisdiction to review the Appeals Council's decision denying [the claimant's] request for review. That is, we may neither affirm nor reverse the Appeals Council's decision.").

404.1529(a) (in "evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence"). Dr. Gough treated Ms. Allen on dozens of occasions in 2002 and 2003 and her notes are competent evidence that may not be disregarded without comment. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from . . . other sources [under § 404.1513(d)] *if* the ALJ gives reasons germane to each witness for doing so." (emphasis added; internal quotation marks omitted)). Accordingly, the ALJ erred in failing to evaluate Dr. Gough's notes.

Like Dr. Schloesser, Dr. Gough submitted a letter regarding Ms. Allen to the Appeals Council. Tr. 848. Dr. Gough's letter does not contain new evidence not already recorded in her treatment notes. Dr. Gough's letter states that Ms. Allen was "unable to work" because of her symptoms. As discussed above, however, the determination of whether a claimant is able to work is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."). Thus, Dr. Gough's letter does not automatically warrant a finding of disability.

### 3. Dr. Kathryn Kocurek

Dr. Kocurek has been Ms. Allen's primary care physician since December 1, 2003. Tr. 787-89. Ms. Allen visited Dr. Kocurek six times during the relevant period. Tr. 781-89. Dr. Kocurek's treatment notes from those visits reveal that Dr. Kocurek assessed Ms. Allen as suffering from chronic pain syndrome, Tr. 782, 787, chronic neck pain, Tr. 786, back pain,

Tr. 784, migraine headaches, Tr. 782, 784, 788, and depression, including suicidal ideation, Tr. 785-86. In a letter from October 2009, Dr. Kocurek stated that Ms. Allen "was overwhelmed with depression secondary to chronic pain and had suicidal ideation in January 2004."[3] Tr. 836. Dr. Kocurek concluded that it "is my professional opinion that Ms. Allen is completely and permanently disabled secondary to severe degenerative changes of the spine with chronic pain syndrome and depression. Her situation has not substantially changed since I met her in December 2003[.]" Tr. 837.

The ALJ gave Dr. Kocurek's letter "little weight" because "Dr. Kocurek's opinion is inconsistent with the objective medical evidence, which shows, as noted above, that the claimant's symptoms improved after surgery and with treatment." Tr. 22. This conclusory assessment is insufficient to discredit a treating physician's medical opinion. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ failed to specifically identify any evidence contradicting Dr. Kocurek's letter. Moreover, the ALJ failed to discuss any of Dr. Kocurek's detailed treatment notes, which formed the basis for her 2009 letter. These failures are particularly glaring given that Dr. Kocurek was Ms. Allen's primary care physician between December 2003 and December 2004 and Dr. Kocurek examined Ms. Allen in person six

---

[3]  Unlike Dr. Schloesser and Dr. Gough, Dr. Kocurek submitted her first letter, dated October 1, 2009, before the ALJ issued his decision on October 30, 2009. Tr. 836-37. The ALJ's decision expressly mentions this letter. Tr. 22. After the ALJ issued his decision, Dr. Kocurek submitted another letter, on December 15, 2009, to the Appeals Council discussing the ALJ's decision. Tr. 842-44. The December 15, 2009 letter contains substantially the same factual information and medical conclusions as the October 1, 2009 letter.

times during this period. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("the treating physician's opinion as to the combined impact of the claimant's limitations—both physical and mental—is entitled to special weight").

  In addition, the court disagrees that Dr. Kocurek's letter is wholly inconsistent with the medical evidence, including her own treatment notes from the relevant period. Dr. Kocurek's treatment notes show that Ms. Allen suffered from chronic pain, headaches, and depression even after her April 9, 2003, surgery and during her ongoing treatment. Tr. 781-89. In a note dated October 12, 2004, Dr. Kocurek recorded that Ms. Allen "is unable to work secondary to spinal pain and headaches." Tr. 781. Dr. Kocurek noted that Ms. Allen's depression and headaches had improved, but she still assessed Ms. Allen as suffering from migraines, neck pain, and chronic back pain. *Id.* In a note dated January 20, 2004, Dr. Kocurek wrote that Ms. Allen was "tearful and anxious." Tr. 786. Dr. Kocurek also wrote that Ms. Allen "agrees to call should her suicidal ideation become intensional with a plan." *Id.* Throughout the relevant period, Dr. Kocurek's treatment notes consistently recorded assessments of headaches and chronic pain. Tr. 781-89.

  Medical evidence from other sources also supports some of Dr. Kocurek's letter. Dr. David Schloesser's treatment notes from 2004 demonstrate that although the intensity of Ms. Allen's headaches decreased, Ms. Allen continued to suffer from headaches "daily." Tr. 725; *see* Tr. 724-38. Moreover, Dr. Schloesser reported that Ms. Allen's headaches "accelerated" in the two weeks before December 21, 2004. Tr. 723. Dr. Brad Ward's treatment note from December 2003, reported that Ms. Allen "still continues to struggle with some neck pain" even though it had improved after surgery. Tr. 419. He also noted that Ms. Allen "still struggles with headaches" and he stated that Ms. Allen "did not do well with physical therapy and did not get much relief in her symptoms." Tr. 419. Physical Therapist Jonathan Sampson reported in July

2004 that Ms. Allen "states that she has been very painful during the last week, with left side-sided headache, left neck pain, left upper trapezius pain, left arm pain, left low back pain, and left leg pain." Tr. 318. Although Mr. Sampson noted that Ms. Allen was "significantly better than at the time of the evaluation," he also stated that Ms. Allen "has stopped improving subjectively." *Id.*

In light of this evidence, the ALJ's finding that Dr. Kocurek's opinion is entitled to little weight is not based on specific reasons supported by substantial evidence and is error.[4] *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.").

## C.     Ms. Allen's Testimony

Ms. Allen also argues that the ALJ erroneously discredited some of her testimony.[5] Pl.'s

---

[4]  Although the ALJ failed to properly evaluate Dr. Kocurek's opinion, there may be good reasons—not discussed by the ALJ—to discount some of Dr. Kocurek's conclusions. First, it is unclear whether Dr. Kocurek's assessment of Ms. Allen's exertional capabilities applies to the relevant time period. Dr. Kocurek's treatment notes do not reveal that she assessed Ms. Allen's ability to sit, walk, stand, and lift before Ms. Allen's insurance lapsed on December 31, 2004. Second, Dr. Kocurek's conclusion that "Ms. Allen is completely and permanently disabled" is not binding on the Commissioner. 20 C.F.R. § 404.1527(d)(1). The Commissioner may consider these reasons on remand. The Commissioner may also wish to contact Dr. Kocurek to ask her to clarify her opinion. *See* 20 C.F.R. § 404.1520b(c)(1).

[5]  The Commissioner asserts that Ms. Allen has not challenged the ALJ's finding that Ms. Allen's testimony is not entirely credible. Def.'s Br. at 7 ("the ALJ properly found Plaintiff's statements regarding the extent of her impairments to be less than credible, a finding unchallenged on appeal"). The court only considers "issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) Although Ms. Allen does not identify a challenge to the ALJ's determination that her testimony lacked credibility under a separate heading in her opening brief, she raises the issue under the heading contesting the ALJ's evaluation of the medical evidence. Pl.'s Br. at 17. Ms. Allen's argument is neither entirely clear nor especially articulate. Nonetheless, Ms. Allen states the correct standard for reviewing an ALJ's findings regarding a claimant's credibility, cites two Ninth Circuit cases setting forth that standard, briefly describes her testimony, and

Br. at 17. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Ms. Allen testified to experiencing ongoing, debilitating pain. She testified that "every breath I take . . . my neck, my midback and my low back I get a stabbing" pain. Tr. 39. She stated "I don't think I ever go a month without having a few days in there that I'm locked in the dark" because of a severe headache. Tr. 50. She also stated that although her 2003 fusion surgery "did help the neck a bit," it "did not alleviate the headache and the upper cervical pain and the pain down in my shoulder[.]" Tr. 45. During the year following her surgery, Ms. Allen "couldn't do anything" and "mainly . . . never left the house except to go to doctors appointments." Tr. 45-46.

The ALJ directly addressed Ms. Allen's credibility in only two sentences. First, the ALJ found that the "claimant's statements concerning the intensity, persistence and limiting effects of

---

explains that the ALJ disregarded some of that testimony. *Id.* As such, Ms. Allen's argument is sufficiently specific and distinct that this court must consider it.

[her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 21. As this court has noted before, this is a boilerplate statement that has been used inappropriately in many Social Security decisions. *See, e.g., Tilton v. Astrue*, No. 6:10-cv-1151-SI, 2011 WL 4381745 *12 n.5 (D. Or. Sept. 20, 2011). Similarly, the Seventh Circuit has recently held that this boilerplate "is meaningless." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing." *Id.* The court agrees that this boilerplate language does not provide specific, clear, and convincing reasons to discredit Ms. Allen's testimony.

Second, the ALJ found that the "overall record and objective medical evidence do not support the alleged severity of the claimant's symptoms and limitations[.]" Tr. 21. An ALJ, however, "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81 F.3d at 834. Moreover, although the ALJ summarized portions of the medical evidence, the ALJ did not apply any of that medical evidence to an analysis of Ms. Allen's credibility. As such, the ALJ failed to "make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002); *see also* SSR 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). The ALJ's finding discrediting Ms. Allen's testimony is, therefore, error.

**D.      Depression and emphysema**

Finally, Ms. Allen argues that the "ALJ did not consider [Ms. Allen's] mental condition for depression and anxiety[.]" Pl.'s Br. at 19. Ms. Allen is correct: The ALJ's decision nowhere considers—or even mentions—Ms. Allen's claim that she suffers from depression. This is error. The social security regulations require an ALJ to consider all of a claimant's medically determinable impairments. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware"). Moreover, where "a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions."[6] *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir.2005)); 20 C.F.R. § 404.1520a. Failure to complete this form "requires remand." *Id.* Ms. Allen raised a colorable claim that she suffered from depression. Dr. Kocurek, a medically acceptable source, repeatedly noted that Ms. Allen suffered from depression. Tr. 785-86, 789, 836. *See* 20 C.F.R. § 404.1513(a) (medically acceptable source can establish whether claimant has a medically determinable impairment). In addition, Ms. Allen testified that depression interfered with her ability to interact with other people. Tr. 50-51. In light of this evidence, the ALJ was required to consider Ms. Allen's claim to suffer from depression at steps two and four. The ALJ's failure to do so requires remand.

---

[6] The record contains a Psychiatric Review Technique Form, consisting of several pages of check-the-box forms and a brief narrative, completed by Dr. Robert Henry. Tr. 493-506. The ALJ, however, did not attach this Form to his decision or discuss Dr. Henry's findings. In any event, Dr. Henry failed to complete most of the Form (on more than half of the pages, Dr. Henry did not check any boxes at all, even the box marked "Insufficient evidence."). Moreover, Dr. Henry states in his narrative that there "is no mention of any psych impairment" during the relevant time period. As noted above, however, Dr. Kocurek repeatedly assessed Ms. Allen as suffering from depression during the relevant period. Tr. 785-86, 789.

Ms. Allen also suggests that the ALJ did not appropriately consider her emphysema. Pl.'s Br. at 20. The ALJ properly evaluated Ms. Allen's emphysema at step two: The ALJ cited evidence in the record demonstrating that Ms. Allen's condition did not cause her vocational limitations during the relevant time period. Tr. 19-20 (citing Tr. 670). Even though the ALJ properly found that Ms. Allen's emphysema was not severe at step two, the ALJ may need to consider Ms. Allen's emphysema at step four. 20. C.F.R. § 404.1545(a)(2) (in formulating a claimant's RFC, "[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'"). During the hearing, Ms. Allen testified that she had trouble breathing and was susceptible to environmental allergies. Tr. 41-42. When the Commissioner re-evaluates Ms. Allen's testimony on remand, the Commissioner should decide whether to credit this testimony. If the Commissioner credits this testimony, the Commissioner should consider whether to incorporate these symptoms into Ms. Allen's RFC.[7]

**E.      Remand**

The court may, in its discretion, order an immediate payment of benefits. In "Social Security Act cases Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir.2000). The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or to order an immediate award of benefits. Immediate payment of benefits is appropriate where: (1) the ALJ failed to provide

---

[7]  Ms. Allen also states that she suffers from irritable bowel syndrome, renal stones, and reflux. Pl.'s Br. at 5, 20. Although there are passing mentions of these conditions in the medical evidence, the evidence does not establish that these conditions have limited Ms. Allen's functional capacity. In fact, Ms. Allen did not mention any of these conditions during her hearing.

legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain

for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such testimony credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th

Cir. 2004).

Immediate payment of benefits is not warranted in this case. Even when crediting

Ms. Allen's testimony as true, it is unclear whether the ALJ would be required to find Ms. Allen

disabled because the ALJ did not ask the VE a hypothetical question that adequately accounted

for Ms. Allen's testimony. As such, the court cannot conclude that Ms. Allen would have been

unable to successfully adjust to other work that exists in significant numbers in the national

economy. Ms. Allen's case, therefore, is remanded to the Commissioner for further proceedings.

## CONCLUSION

The Commissioner's decision is **REVERSED** and the case is **REMANDED**. On remand,

the Commissioner should re-evaluate the medical evidence consistent with 20 C.F.R. § 1527 and

Ninth Circuit case law. If necessary, the Commissioner should contact Dr. Kocurek to seek

clarification of her opinion. *See* 20 C.F.R. § 404.1520b(c)(1). The Commissioner should also re-

evaluate Ms. Allen's testimony consistent with SSR 96-7p and Ninth Circuit case law. In

addition, the Commissioner must consider whether and the extent to which Ms. Allen suffers

from depression. If warranted, the Commissioner should order a consultative mental

examination. *See* 20 C.F.R. § 404.1517. To evaluate the severity of Ms. Allen's depression, the

Commissioner should employ the process set forth in 20 C.F.R. § 404.1520a. If necessary, the

Commissioner should reformulate Ms. Allen's RFC, taking into account Ms. Allen's

emphysema, and hold a new hearing to take new testimony from Ms. Allen and/or a VE.

IT IS SO ORDERED.

Dated this 17th day of July, 2012.

/s/ Michael H. Simon

_____

Michael H. Simon
United States District Judge